Case: 7:04-cv-00256-GWU   Doc #: 10   Filed: 06/09/05   Page: 1 of 12 - Page ID#: 60

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
**FILED**
JUN 0 9 2005
AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

CIVIL ACTION NO. 04-256-GWU

SAMANTHA HURLEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

* * * * * * * *

The plaintiff appeals an administrative decision to terminate Social Security Income (SSI) benefits originally awarded in 1990. The case is currently before the Court on cross-motions for summary judgment.

## STANDARDS APPLICABLE TO TERMINATION DECISIONS

When the issue is the termination of benefits, the Regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2).

3.  If the beneficiary does not equal a listing, then the question is whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4.  Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(f)(4).

5.  Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(5).

6.  If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6).

7.  If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7).

8.  Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to

support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## LAW APPLICABLE TO ADULT'S SSI BENEFITS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),

3

Hurley

        416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

        One of the detracting factors in the administrative decision may be the fact

4

that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Hurley

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small

Hurley

articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that the agency properly decided to terminate Hurley's SSI as of September, 2001. (Tr. 21). As of that time frame,

the then-18 year old Hurley was believed to suffer from borderline intellectual functioning with significant reading deficits and nerve problems. (Tr. 15). Her only physical restriction according to the ALJ, was a limited ability to bend and she was otherwise physically capable of working at the heavy level. (Tr. 20). Mental restriction to simple, routine public work not requiring significant public contact or literacy were present, according to him. (Id.). As the vocational expert was able to identify significant jobs compatible with that vocational profile, the termination decision was found to be proper. (Tr. 18-20).

The case does not implicate any significant concerns about Hurley's physical status. Neither the Disability Determination Rationale connected with the original 1990 benefits award (Tr. 38) nor the old benefits application completed by the plaintiff's mother (Tr. 84) had focused on any physical problems. In more recent times, Hurley had informed Examiner Phil Pack that she had no medical problems and was on no medication (Tr. 123) and, while she mentioned a "back problem" at the administrative hearing (Tr. 196), no doctor suggested specific restrictions. Thus, the plaintiff's physical status should not be the focus of analysis of the issue of medical improvement and, to the extent physical restrictions were addressed to the current vocational expert, they were gratuitous.

Hurley's mental status, implicated in the award of benefits, bears further scrutiny. The original Disability Determination Rationale form cited a primary

Hurley

diagnosis of mild mental retardation ("IQ 58") with no condition mentioned as a secondary diagnosis. (Tr. 38). Indeed, the plaintiff's mother had focused mainly on mental retardation and learning disabilities when the original benefits application had been filed (Tr. 84). While the agency representative processing her original claim also noted a speech defect and some evidence of anxiety (Tr. 91), not all of the other sources agreed. The teachers at the child's school (part of the early information) noted that she had a short attention span/memory and seemed to be suffering from a learning disability. (Tr. 92-93). One noted that "the simple task of coming from her first grade classroom to the resource room was a challenge [for her]." (Tr. 93). One teacher felt she was very nervous (Tr. 93), but another simply referred to as "very sweet [and] loveable" and said nothing about anxiety (Tr. 92). Examiner Psychologist Shelle Dietrich described the child as "sweet and congenial" but shy and functioning on a mildly mentally retarded level, as her IQ scores from 58 to 68 suggested. (Tr. 118-119) (emphasis added). Hurley could not read or spell any words. (Tr. 119). Her social comprehension was actually average. (Tr. 118). Thus, the Court must focus, first and foremost, on the plaintiff's current intellectual status vis-a-vis her former status in connection with "medical improvement."

Under the regulations, it is noted that IQ scores do not generally stabilize until age 16. See 20 C.F.R. Part 404, Subpart P, App. 1, §112D(10). Thus, the adult plaintiff's scores may differ from those obtained earlier. While brief treatment notes

10

Hurley

from the Mountain Comprehensive Care System estimate an average intellectual ability as of 2001 and 2003 (Tr. 162, 154), no specific testing was performed at the facility and the identity of the author of the notes as a psychologist is unclear. What remains is the recent IQ testing of Phil Pack, who cited IQ scores obtained through good effort of 69 to 84 (Tr. 124), improved from previous scores but still containing an IQ score sufficient to potentially qualify under other sections of LOI §12.05.

There is evidence sufficient to support a finding that no other additional and significant impairment or marked difficulties envisioned by LOI §§12.05C and D was present. This came primarily from Examiner Pack, who described the plaintiff as friendly, talkative and making a good effort on all tasks. (Tr. 125). A reading disorder[1] and borderline intellectual functioning were the only diagnoses. (Id.). The plaintiff was said to have good concentration and attention, ability to relate to co-workers and supervisors, follow work rules, function independently and attend to personal hygiene. (Id.). Only the ability to learn abstract information, engage in financial management and understand safety rules were described to include "fair." (Id.). An agency medical reviewer acknowledged no restrictions other than moderate ones dealing with detailed instructions (Tr. 141-143); the fact that he referenced only 12.05 and no other LOI sections (Tr. 141) indicates that the emphasis was on the plaintiff's intellectual condition and he later stated that he believed there were no

---

[1] This would impact only on the plaintiff's educational status.

Hurley

significant limitations (Tr. 143). [2]

The decision will be affirmed.

This the __8__ day of June, 2005.

*(signature)*
G. WIX UNTHANK
SENIOR JUDGE

---

[2]Thereafter, Mountain Comprehensive Care Center records were introduced, indicating that the plaintiff first sought treatment for complaints of anxiety and depression in September, 2001 (the month ultimately selected as the termination date) when she was aware she might lose her SSI benefits (Tr. 160) and was assigned a GAF of 63 and 65 (Tr. 164)–consistent with mild symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.)-- but was discharged from care due to failure to follow up treatment (Tr. 167). Upon initial evaluation, the plaintiff had been described as friendly, cooperative, alert, attentive, focused, with <u>clear</u> speech and intact memory. (Tr. 162). Significantly, the plaintiff returned to the facility only in August, 2003, over 2 ½ years later. (Tr. 152). Despite complaints of depression, she was actually described as alert, attentive, cooperative, oriented, with clear speech, an intact memory, normal psychomotor activity and an appropriate affect (Tr. 154). Some evidence of being "nervous" was noted. (Tr. 158). Only a depressive disorder was diagnosed, of moderate degree, and a current GAF of 55 was assigned. (Tr. 155). Given the fact this lower GAF score was cited only once, and did not result from long-term treatment, this is not dispositive.